UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RACHEL WALZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-cv-00284-MTS |
| | ) |
| LELAND DUDEK,[1] *Acting Commissioner* | ) |
| *of the Social Security Administration*, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant, the Acting Commissioner of the Social Security Administration, denying the application of Rachel Walz ("Plaintiff") for Disability Insurance Benefits ("DIB").[2] On November 12, 2014, Plaintiff applied for DIB benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 ("the Act") alleging a disability onset date of May 26, 2012. (Tr. 427-431). On February 22, 2023, the ALJ found Plaintiff was not disabled under sections 216(i) and 223(d) of the Act through the date last insured, December 31, 2017. (Tr. 16). The ALJ found that, although Plaintiff suffered from severe impairments including degenerative disc disease of the lumbar spine, rheumatoid arthritis,

---

[1] Leland Dudek is now the Acting Commissioner of SSA. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Dudek is substituted as the proper Defendant.

[2] Section 405(g) provides for judicial review of the SSA Commissioner's "final decision." 42 U.S.C. § 405(g). After an ALJ concluded Plaintiff was not disabled under the Act on June 13, 2018, (Tr. 206-227), the Appeals Council granted Plaintiff's request for review and remanded the case because of a lack of notice of hearing in the record. (Tr. 228-232). A second ALJ also concluded that Plaintiff was not disabled on June 5, 2020. (Tr. 236-248). The Appeals Council again granted review and remanded the matter for consideration of evidence submitted on December 2, 2014, and after the hearing. (Tr. 257-258). Before this Court is a third ALJ's conclusion that Plaintiff was not disabled. (Tr. 12-39). The Appeals Council denied review of this third decision. (Tr. 1-6). Therefore, the Acting SSA Commissioner has now issued a final decision that is reviewable under 28 U.S.C. § 405(g).

tendinitis of the upper and lower extremities, and fibromyalgia, Plaintiff was capable of performing light work with some functional limitations and that sufficient jobs existed in the national economy that Plaintiff could have performed.  (Tr. 18-27).  For the following reasons, the Court affirms.

I. **Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d).  A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a).  Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d).  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e).  At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545.  The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the

2

observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).  At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by comparing the RFC with the physical demands of the claimant's past relevant work.  20 C.F.R. § 404.1520(f).  If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled.  *Id.*  If the ALJ finds at Step 4 that a claimant cannot return to any past relevant work, the burden shifts at Step 5 to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy.  *Id.* at § 404.1520(g).

      The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it.  *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision).  The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be

narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).[3]

## II. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above.  At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") during the alleged period of disability.  (Tr. 18).  At Step 2, the ALJ found Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, rheumatoid arthritis, tendinitis of the upper and lower extremities, and fibromyalgia.  (Tr. 18).

At Step 3, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment.  (Tr. 21).  Thus, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567, with postural, environmental, and physical limitations.  (Tr. 21).  Plaintiff can occasionally climb ramps and stairs.  (Tr. 21).  She can frequently balance and stoop.  (Tr. 21).  She can frequently handle, finger, and perform overhead reaching with bilateral upper extremities.  (Tr. 21).  And she must avoid hazards such as unprotected heights or dangerous machinery.  (Tr. 21).

---

[3] The Case Management Order required Plaintiff to respond to Defendant's statement of additional material facts, "with any denials supported by citations to the record."  Doc. [4].  In addition, "**[f]ailure to comply with the above provision will result in briefs being stricken**."  *Id.* at p.2 (emphasis in original).  Plaintiff did not respond to Defendant's statement of additional facts.  Doc. [16-1] at pp. 2–6.  Accordingly, Plaintiff's reply brief is **STRICKEN**.

At Step 4, the ALJ found Plaintiff did not have any past relevant work. (Tr. 26). At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found there were jobs in the national economy that Plaintiff could perform, despite her limitations, such as merchandise marker, mail clerk, and office helper. (Tr. 27). Consequently, the ALJ concluded Plaintiff is not disabled under the Act. (Tr. 27).

### III. Discussion

The specific issues in this case are (1) whether the ALJ properly considered the opinions of treating physicians Orlanda Varela and Andrew J. Scaduto in assessing Plaintiff's mental health limitations; (2) whether the ALJ appropriately assigned weight and considered the opinions of agency physicians Cecilio Paniagua and Sonya Adamo; and (3) whether the ALJ appropriately considered Plaintiff's mental health limitations in crafting an RFC.

1. *Treating Doctors' Opinions*

Since Plaintiff filed for disability insurance benefits *before* March 2017, the so-called "treating physician rule" applies. 20 C.F.R. §§ 404.1520c(a), 404.1527; *Wymer v. Saul*, 4:19-cv-2616-MTS, 2021 WL 1889870, at *6 n.3 (E.D. Mo. May 11, 2021). This rule means that a "treating physician's opinion should be granted controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Nowling v. Colvin*, 813 F.3d 1110, 1122 (8th Cir. 2016) (internal quotations and citations omitted). An ALJ must give "good reasons" for discounting a treating physician's opinion. *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020); 20 C.F.R. § 404.1527(c)(2).

If an ALJ decides not to give a treating physician's opinion controlling weight, then the ALJ uses several factors to evaluate the opinion, including the consistency of the opinion with the

5

record as a whole, the length of the treatment relationship and frequency of examinations, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, and the level of specialization of the source.  20 C.F.R. § 404.1527(c)(2)–(6); *Lucas*, 960 F.3d at 1068.  SSA guidance provided that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewer . . . the reasons [for the decision]." *Lucas*, 960 F.3d at 1068 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

Plaintiff highlights two "opinions" from Dr. Varela and one from Dr. Scaduto.  Dr. Varela, a Psychiatrist in Madrid, Spain where Plaintiff previously resided, provided a report dated November 20, 2014.  (Tr. 682-683).[4]  Dr. Varela stated that Plaintiff's current diagnoses were mixed personality disorder with both histrionic and dependent traits and anxiolytic and hypnotic use disorder.  (Tr. 682).  She noted a history of depression and major mood swings from 2007; but indicated that Plaintiff "has gained insight," is compliant with treatment, and "seems to be more content and able to assume daily frustrations."  (Tr. 682).  The report contains no opinions of Plaintiff's functional limitations as a result on her mental health issues.  In a subsequent report from February 16, 2016, Dr. Varela diagnosed generalized anxiety disorder, recurrent depressive disorders, abuse of anxiolytics and hypnotics, and mixed dysfunctional personality characteristics.  (Tr. 726).  Dr. Varela also included an opinion, stating:

> It is crucial to currently mention with regard to the functional repercussions of her problematic [sic] that the most limiting aspect is the level of everyday anxiety, to which is added the periodic appearance of depressive episodes of moderate intensity, during which the patient presents agoraphobia, abandons the household chores and self-care, and finds herself in a situation of relative dependency.  Both symptoms result from a reduction of her real possibilities for performing a professional occupation [sic]."

---

[4] Medical records from Dr. Varela appear to be translated from Spanish to English.

(Tr. 726). For support, Dr. Varela recounts Plaintiff's own statements of her mental health. (Tr. 726 (stating "[a]ccording to the description that the patient made . . ." and "[s]he likewise described . . . .")).

Dr. Scaduto's March 1, 2016, opinion states that he had been treating Plaintiff since 2009 and that she "meets the Social Security criteria" for total and permanent disability. (Tr. 728). Dr. Scaduto notes that Plaintiff had been treated for severe anxiety, disabling depression, and agoraphobia, in addition to physical ailments, and that she is in constant pain. (Tr. 728). As a result, Dr. Scaduto concludes that Plaintiff "is unable to work and requires assistance for the activities of daily living." (Tr. 728).

Plaintiff argues that the ALJ erred by failing to address Dr. Varela's 2014 report and Dr. Scaduto's 2016 opinion and that the ALJ did not appropriately consider Dr. Varela's 2016 opinion. Dr. Varela's 2014 medical report is not an opinion; it is an assessment of Plaintiff's mental health and diagnosis. As such, the ALJ is not required to treat the report as an expert opinion. And, to the extent that the ALJ did not specifically address the contents of the report, the "ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quotation marks and citation omitted). In addressing Dr. Varela's 2016 opinion, the ALJ found that the "statements are not supported, as Dr. Varda's [sic] treatment notes have not been submitted into evidence, and appear to simply be a repetition of the claimant's self-assessment of her limitations. The undersigned has therefore given them only limited weight." (Tr. 24-25). Thus, the ALJ found that the opinion was not supported by the evidence and that the opinion instead relied on Plaintiff's subjective statements of her mental health. *See Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (where ALJ did not credit claimant's allegations, he was entitled to discount physician's opinions that relied on those allegations). Plaintiff acknowledges

7

—or at least has provided no citation—that the record contains no treatment notes from Dr. Varela that would support her opinions.  *See Kraus v. Saul*, 988 F.3d 1019, 1025 (8th Cir. 2021) (finding that the ALJ properly discredited a treating source's opinion because, in part, it was unsupported by treatment notes).  Likewise, Plaintiff points to no other part of the record that would support Dr. Varela's opinion.  And, notwithstanding Plaintiff's current argument, Dr. Varela relied on Plaintiff's own subjective statements of her mental health in rendering an opinion—there are no clinical findings or citations in the one-page opinion.  (Tr. 726).  Accordingly, the ALJ did not err in discounting this opinion and giving it little weight.

As to Dr. Scaduto's opinion, the failure to address it is not grounds for remand.  Dr. Scaduto opined that Plaintiff was "totally, permanently disabled" and unable to work.  (Tr. 728).  Besides stating that the ALJ failed to address this opinion, Plaintiff offers no argument or analysis that consideration of this opinion would have rendered a different result.  *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting "out of hand" undeveloped and conclusory arguments).  In any event, whether a claimant is disabled is an issue reserved to the Commissioner; a medical provider's opinion about a claimant's disability is not considered an opinion that should be given controlling weight.  *KKK ex rel. Stoner v. Colvin*, 818 F.3d 364, 371 (8th Cir. 2016); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("For example, a treating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner." (internal quotations, alterations, and citation omitted)).  Therefore, the ALJ's

8

failure to specifically address this opinion amounts to nothing more than harmless error.[5]  *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (explaining that to establish that an error is not harmless, a claimant "must provide some indication that the ALJ would have decided differently if the error had not occurred").

    2. *Agency Physicians' Opinions*

Unlike treating physicians, the applicable regulations afford less deference to a non-examining consultative opinion from a state-agency physician. *Wildman*, 596 F.3d at 967.  When reviewing such opinions, an "ALJ evaluate[s] the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." *Id.* (alterations in original).  An ALJ may disregard such opinions when the state-agency physician does not have access to all the medical evidence in the record.  *See id.* at 967–68.

On June 8, 2015, after a consultative evaluation, Dr. Paniagua did not provide an opinion as to Plaintiff's functional limitations resulting from her psychological condition; rather, Dr. Paniagua diagnosed Plaintiff with major depressive disorder, recurrent, accompanied by bradypsychia secondary to psychotropic medication.  (Tr. 700-701).  Plaintiff argues that the ALJ failed to address this "opinion" in formulating an RFC because Dr. Paniagua "described greater restrictions than the ALJ identified."  The ALJ did refer to Dr. Paniagua's report in recounting Plaintiff's mental health condition.  (Tr. 18-20).  However, it is unclear from Plaintiff's argument what "greater restrictions" Dr. Paniagua opined about; the report only offers a history of Plaintiff's mental health and a diagnosis.  There is no opinion as to her functional limitations.[6]  A disability

---

[5] The Court notes that the ALJ referred to Dr. Scaduto's opinion and the conditions that he mentions therein. (Tr. 18, 22-24).  As such, it is clear that the ALJ considered the information contained in the document but did not consider the information to be an appropriate opinion.

[6] Dr. Paniagua noted that Plaintiff appeared to have a poor attention span due to medication, that she was "cognitively unimpaired," and that, in the past, she had periods of an inability to cope.  (Tr. 700-701).

determination is based on an analysis of functional limitations resulting from medical conditions; that Plaintiff may suffer from a condition does not address the functional limitations that the condition could cause. *See* SSR 96-8P, 1996 WL 374184 (July 2, 1996); *see also Montgomery v. O'Malley*, 122 F.4th 1059, 1065-1066 (8th Cir. 2024) (noting that the ALJ correctly focused on the functional limitations as opposed to a particular diagnosis). Accordingly, the ALJ did not err in declining to address Dr. Paniagua's report as an opinion of Plaintiff's functional limitations. *See Wildman*, 596 F.3d at 966.

Dr. Adamo, a consultative examiner for SSA, reviewed Plaintiff's medical records supposedly on initial review on November 12, 2015, and upon reconsideration on August 14, 2016. (Tr. 175-189 and 191-204).[7] The 2015 initial report notes that "[m]entally, the claimant seems to have a severe impairment that does not meet the listings. She seems to have mild limitations in all areas." (Tr. 183).[8] The 2016 report, signed by Dr. Adamo, indicates:

> I have reviewed all the evidence. This includes a letter from her psychiatrist on 2/15/16, who writes that she has been treated since 2007. She has chronic depression and anxiety, and substance abuse as well as a personality disorder are diagnosed. It is opined that her anxiety and dependency prevent her from working. There is another letter of 11/14 that notes she has been in treatment since 2007 with the current personality disorder and substance abuse, and she is more compliant with treatment and is more content. She has therapy (weekly) that is borderline in nature."

(Tr. 201). Dr. Adamo concludes that there is "IE" – insufficient evidence – "with only two letters from her psychiatrist for treatment of close to a decade. Some progress notes are needed (or

---

[7] Dr. Adamo's signature does not appear on the initial disability determination explanation. (Tr. 189). However, she notes in the reconsideration that "I was asked to review this case again, and have reviewed the evidence. There is no new evidence in the file as of my last review. There continues to be I.E. [ insufficient evidence]," (Tr. 199). The parties do not point to any part of the record that would include Dr. Adamo's initial assessment.

[8] The report goes on to state, "[h]owever, I do defer to your medical expertise." (Tr. 183). It is unclear who wrote this section of the report, Dr. L. Cylus, who completed the physical residual function capacity section, or Jenice Young, a disability adjudicator. (Tr. 189). This lack of clarity, however, does not alter any of the Court's findings.

information from her therapist) is necessary to gain sufficient details to render an opinion (with no information really on her substance abuse." (Tr. 201).  Thus, even though Plaintiff was initially found to have severe mental impairments that caused only mild limitations in functioning, it was subsequently determined that there was insufficient information to render an opinion on her mental functioning.  The ALJ found that the "non-examining physicians'" assessments "are generally well supported and consistent with the record as a whole" and she gave them "considerable weight." (Tr. 25-26).  The ALJ further found that there was no additional information that would alter these assessments. (Tr. 26).

Plaintiff argues that the "ALJ failed to explain why her conclusion was inconsistent with Dr. Adamo's opinion which she assigned the most weight." (Doc. 10, p. 9).  In making this argument, Plaintiff relies on the "severe" finding set forth in the initial determination by a disability adjudicator. (Tr. 183).  Both Plaintiff and Defendant attribute this opinion to Dr. Adamo; but that attribution is not supported by the record.  As indicated above, Dr. Adamo did not render an opinion on either the severity of, or the functional limitations associated with, Plaintiff's mental health; she noted that there was insufficient evidence to determine Plaintiff's mental residual functional capacity.  The ALJ specifically indicated that she was referring to the "non-examining physicians'" opinions (Tr. 25), i.e. Dr. Adamo's and Dr. Cylus' opinions, which she found supported by the evidence.  Dr. Adamo's opinion is that there was insufficient evidence to "determine mental allegations." (Tr. 199).  The ALJ adopted that opinion; and, as set forth below, the ALJ went on to find that substantial evidence contained in the record did not support any limitations related to Plaintiff's mental health.  Plaintiff's argument, then, that the ALJ was inconsistent is not well taken.

3. *Mental Health RFC*

Plaintiff finally argues that the ALJ failed to take Plaintiff's mental health diagnoses into account in fashioning an RFC.  A claimant's RFC is the most she can do in a work setting despite her limitations.  *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2023) (citing 20 C.F.R. § 404.1545(a)(1)).  When determining a claimant's RFC, the ALJ must consider "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of [her] limitations."  *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (internal quotations and citations omitted).

The ALJ addressed Plaintiff's mental health at Step 3.  The ALJ acknowledged that Plaintiff alleged that she has functional limitations due to depression and mixed personality disorder with anxiety.  (Tr. 18).  The ALJ found that these conditions were not severe because there was no supporting evidence within the relevant timeframe asserting more than mild functional limitations.  In particular, the ALJ referred to Dr. Varela's November 2014 report noting that Plaintiff is "able to assume daily frustrations even when her stress vulnerability is still very high," (Tr. 682); Dr. Isabel Gonzalez Garcia's December 2014 statement that Plaintiff has a "mood disorder although she reports discrete clinical improvement" with no indication of any functional limitations that result from her mental health (Tr. 684-690); Dr. A. Humbria's (Rheumatologist) November 2015 evaluation, in which Plaintiff's mental health issues are described as "complicat[ing]" her "clinical picture," but in which there is no specific connection made between any functional limitations and her mental health, (Tr. 717-723); and, Dr. Varela's February 2016 opinion which the ALJ found unconvincing because of the lack of support, as indicated above, (Tr. 726).  *Wildman*, 596 F.3d at 969 (ALJ did not err in declining to include in RFC the limitations from physicians' opinions he properly disregarded).  Thus, the ALJ found that there were no

medical records that supported a finding of a severe mental health condition, and that Plaintiff only had mild functional limitations related to her mental health.

> The ALJ also considered other medical treatment reports which found Plaintiff to be:
>
> alert, oriented, pleasant, and coherent with an appropriate mood and affect, and mental status examinations have been negative for hypomania and suicidal and homicidal ideation. It was noted by examiners on July 15, 2013, that the claimant did not exhibit signs of undue depression, anxiety, or agitation. Furthermore, examiners have found her reasoning to be normal, her judgment to be intact, and her memory to be appropriate. The evidence of record fails to demonstrate that the claimant has ever required psychiatric hospitalization. She has received counseling and is being prescribed psychotropic medications. . . . The evidence of record failed to demonstrate that the claimant has suffered significant adverse side effects from these medications.

(Tr. 18-19 (internal citations to the Transcript omitted)). Plaintiff also received "brief and irregular" mental health treatment as described by Dr. Varela in July 2009. (Tr. 20, 784, 1130). Thus, the ALJ found that the medical record as a whole did not support anything other than mild limitations related to Plaintiff's mental health condition. (Tr. 19). *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("The absence of supporting medical evidence is relevant to the consideration of a claimant's subjective medical complaints."). Plaintiff does not assign any error to this conclusion because she focuses entirely on the opinion evidence set forth above.

The ALJ further found that Plaintiff was capable of a "wide range" of activities of daily living including caring for her own personal needs, caring for her daughter, shopping, managing finances, attending medical appointments, driving, using a taxicab, meditation, reading, needle point, watching television, maintaining a long-term relationship with her husband and child, socializing with others, and interacting appropriately with treatment providers. (Tr. 19-20). Again, Plaintiff does not challenge these findings. *See Despain v. Berryhill*, 926 F.3d 1024, 1028–29 (8th Cir. 2019) (ALJ's evaluation of treatment notes, claimant's course of treatment, claimant's daily activities, and consultant's opinions constituted substantial evidence supporting RFC

13

determination).  Based on the medical records and Plaintiff's activities of daily living the ALJ found that Plaintiff only had mild limitations and therefore did not have a severe mental condition. (Tr. 20).  *See* 20 C.F.R. § 404.1520a(d)(1).

The ALJ further indicated that she considered all of Plaintiff's symptoms in developing an RFC.  (Tr. 21).  She refers to Plaintiff's medications for mental health treatment and noted that they did not produce adverse side effects.  (Tr. 23).  She also discussed the opinion evidence outlined above in finding that Plaintiff's statements of disabling mental conditions were not supported by treatment notes.  (Tr. 24-25).  As such, the ALJ adequately considered Plaintiff's mental health and explained why the RFC did not include any restrictions related to her mental health.  *See Strongman v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (noting that the ALJ need only minimally articulate his reasoning).

The Court acknowledges that an ALJ is required to fully develop the record and should contact treating physicians if a critical issue is undeveloped; however, an ALJ is only required to acquire other medical evidence if the record is insufficient to determine an issue.  *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir. 2010); *Stormo*, 377 F.3d at 806.  Here, Plaintiff does not argue that the ALJ did not develop the record or that there are any other records that would support a disabling mental condition.  *See, e.g.*, *Ellis*, 392 F.3d at 994 (finding that the claimant failed to establish that the ALJ did not fully develop the record by failing to inform the court what additional evidence should have been obtained).  Indeed, Plaintiff makes no argument that the ALJ should have ordered a consultative examination or subsequent review of the record that would provide a definitive Psychiatric Review Technique (PRT) analysis.  *See, e.g.*, *Wymer*, 2021 WL 1889870 at *9. The record, as cited by the ALJ reveals that there was insufficient evidence to support a finding that Plaintiff suffered from severe mental conditions.  The ALJ further found that, even when

14

Plaintiff's mental conditions were considered, they did not produce anything more than mild limitations.  As such, the ALJ concluded that the RFC did not need to include any limitations related to Plaintiff's mental health.  *Id.*  To the extent that the ALJ did not clearly state her conclusion, such deficiencies in opinion writing do not warrant remand.  *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008).

Finally, while there is "some evidence" that may support the conclusion that Plaintiff's mental health issues may result in functional limitations that an ALJ may have considered in determining Plaintiff's RFC, reversal is not warranted.  *Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996).  Rather, the ALJ appropriately found Plaintiff's RFC when the evidence as a whole is considered.  And, to the extent that Plaintiff may have argued that the ALJ failed to develop the record, such a failure is not fatal if there is sufficient evidence in the record to support the decision.  *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019); *see also Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (stating that an ALJ may make a decision without obtaining additional medical evidence so long as other evidence in record provides sufficient basis for the decision); 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.").  Substantial evidence supports the ALJ's determination.

* * *

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 14th day of March 2025

                                                                       MATTHEW T. SCHELP
                                                                       UNITED STATES DISTRICT JUDGE